# UNITED STATES DISTRICT COURT
## IN THE EASTERN DISTRICT OF TENNESSEE
### KNOXVILLE DIVISION

| | |
|---|---|
| **LINDA WEAVER,** Surviving Spouse, Next of Kin, and as Personal Representative of the Estate of **ANTHONY WEAVER,** Deceased, **Plaintiff,** ) ) ) ) ) ) | |
| **v.** ) ) ) | |
| ) | **CASE NO.: 3:17-cv-00461** |
| **KNOX COUNTY,** ) **SHERIFF JIMMY "JJ" JONES,** In his Official Capacity, ) **CORPORAL HENRY BRIGHT,** In his Individual and Official Capacity, ) **OFFICER FRYE,** In his Individual and Official Capacity, ) **HELEN ROSS MCNABB MENTAL HEALTH FOUNDATION, INC. d/b/a HELEN ROSS MCNABB CENTER,** and ) **MICHAEL MAURER,** In his Individual Capacity, ) **Defendants**. ) | JURY TRIAL DEMANDED |

## COMPLAINT FOR DAMAGES

**COMES NOW**, Linda Weaver, surviving spouse of Anthony Weaver, deceased and files this Complaint pursuant to 42 U.S.C. § 1983, 42 U.S.C. § 1988, The Constitution of the United States, The Laws of the State of Tennessee and the Constitution for the State of Tennessee.

<u>**PARTIES**</u>

## I.    PLAINTIFF

1.      At all times material hereto, Anthony Weaver was a pre-trial detainee housed in the Roger D. Wilson Knox County Detention Facility located in Knox County, Tennessee at 5001 Maloneyville Rd. who died while in the care and custody of the Knox County Sheriff. Anthony Weaver was a resident of Knox County, Tennessee.

2.      At all times material hereto, Plaintiff Linda Weaver was the lawful wife of Mr. Weaver and is his surviving spouse. There are no minor children of the marriage. Pursuant to T.C.A. 20-5-106(a) and 20-5-107(a) Linda Weaver is next of kin to Anthony Weaver with the right to bring this action. Furthermore, Linda Weaver is acting as Personal Representative of the Estate of Anthony Weaver. Linda Weaver is a resident of Knox County, Tennessee.

## II.    DEFENDANTS

3.      At all times material hereto Defendant Knox County was a political governmental entity in Tennessee and the owner of the Roger D. Wilson Knox County Detention Facility where Anthony Weaver was housed and ultimately died.

4.      Knox County is legally responsible for its own acts and failures to act.

5.      Knox County is statutorily mandated to provide to the Jail sufficient medical personnel as may be needed to provide medical services, including mental health evaluation and treatment to those persons confined who require such services, at the sole expense of the County. T.C.A. § 41-4-115.

6.      To discharge that statutory obligation, Knox County contracted with a Helen Ross McNabb Center, a third party mental health provider.

7. Helen Ross McNabb Center depended upon Knox County to have in place a screening process to identify inmates who were in need of mental health services and refer said inmates to the McNabb Center for mental health evaluation and treatment.

8. Upon information and belief, per Knox County Detention Facility policies and procedures, detention facility staff members are tasked with placing inmates on one of several lists, including an "IRC" list and an "Acute" list. When an inmate is placed on the "IRC" list, a Helen Ross McNabb mental health employee at the Detention Facility must conduct a mental health evaluation within fourteen (14) days from placement on the list. When an inmate is placed on the more serious "Acute" list, he or she must be evaluated for mental health concerns sooner than fourteen (14) days from placement on the list.

9. Defendant Sheriff Jimmy "JJ" Jones acted under color of law at all times material hereto and was and is the elected Sheriff for Knox County, who had statutory responsibility for the Knox County Jails, including the Roger D. Wilson Knox County Detention Facility in Knox County, Tennessee.

10. Defendant Sheriff Jones was statutorily responsible for the day-to-day operation of the Knox County Detention Facility and for the safety of the persons housed therein.

11. Defendant Sheriff Jones is charged with keeping the inmates personally, or by the use of deputies or jailers until the inmate is lawfully discharged. T.C.A. § 8-8-201 (a)(3) and T.C.A. § 41-4-101.

12. Defendant Knox County is civilly liable for any wrong, injury, loss, damage or expense resulting from any act or failure to act on the party of any deputy appointed by the Sherriff acting under color of law. T.C.A. § 8-8-302. Under this provision, "deputy" includes a jailer appointed by the Sherriff pursuant to T.C.A. § 41-4-101. T.C.A. § 8-8-301.

13.     Defendant Sheriff Jones promulgated policies and procedures directed towards the prevention of suicides in the Knox County Detention Facility, which required supervision and training of jail staff.

14.     Defendant Jones as the elected Sheriff of Knox County was responsible for:

    (a)     Hiring, training, supervising and firing persons he employed at the Knox County Detention Facility;

    (b)     Fulfilling his duty to train and supervise his employees in regards to the constitutional rights of its pre-trial detainees;

    (c)     Overseeing the duties performed by these employees;

    (d)     Developing departmental policies, rules and regulations;

    (e)     Ensuring the housing conditions of its inmates are constitutional;

    (f)     Prohibiting and punishing unconstitutional acts of his employees;

    (g)     Developing and implementing mechanisms and processes to ensure inmates are receiving adequate mental health and medical treatment;

    (h)     Ensuring compliance with these departmental policies, rules, and regulations.

15.     At all times material hereto individual Defendants Bright and Frye were deputy sheriffs with the Knox County Sheriff's Office acting under color of law. Corporal Bright and Officer Frye are being sued individually as to the claims in violation of the U.S. Constitution and in their individual and official capacities as to the State Law Claims.

16.     Both Defendants Bright and Frye individually received reports from Mr. Weaver's authorized representative and/or the Social Worker from the Public Defenders Community Law Office placing them on notice that Anthony Weaver was vulnerable and at high risk for suicide. Defendants Bright and Frye individually had the ability and the

duty to ensure Anthony Weaver was placed in a protected environment so as to eliminate the risk that he would commit suicide and engage in self-harm.

17. The Defendants Knox County and Sheriff Jones' had a constitutional duty to provide timely and adequate medical/mental health care and treatment to a pre-trial detainee with a known serious medical/mental health condition.

18. This non-delegable duty was owed to Mr. Weaver, a pre-trial detainee by Knox County and the Sheriff's Office in October of 2016. Such accommodations were fundamental services to persons confined required by the U.S. Constitution.

19. Defendants Knox County and Sheriff Jones contracted with Defendant Helen Ross McNabb Center to provide mental health screening and treatment to inmates, including pre-trial detainees, at the Knox County Detention Facility.

20. Helen Ross McNabb Mental Health Foundation, Inc. d/b/a Helen Ross McNabb Center is a private, non-profit corporation licensed in the State of Tennessee who may be served through its Registered Agent Jerry Vagnier, 201 W. Springdale Avenue, Knoxville, Tennessee 37917-5158.

21. At all times material hereto Defendant Michael Maurer was an employee of Defendant Helen Ross McNabb Center assigned to screen and treat inmates, including pre-trial detainees such as Mr. Weaver at the Roger D. Wilson Knox County Detention Center He may be served at 201 W. Springdale Avenue, Knoxville, Tennessee 37917-5158.

22. Defendants Helen Ross McNabb Center and Michael Maurer were performing traditional governmental services constitutionally required to be performed by Defendants Knox County and Sheriff Jones, making Defendants Helen Ross McNabb Center and Michael Maurer liable under 42 U.S.C. § 1983 for their violations of Anthony Weaver's constitutional rights while acting under color of law.

## VENUE AND JURISDICTION

23.     This is a civil action for monetary relief for violations of the Fourteenth Amendment of the United States Constitution, 42 U.S.C. § 1983;

24.     This Court has original Federal question jurisdiction of Plaintiff' claims under 42 U.S.C. § 1983 pursuant to 28 U.S.C. § 1331 and § 1343. Further, Plaintiff invokes the supplemental jurisdiction of this Court under 28 U.S.C. § 1367(a).

25.     At all times material hereto, the constitutional violations that resulted in the death of Anthony Weaver occurred in Knox County, Tennessee, in the Eastern District of Tennessee making venue in the Eastern District of Tennessee the proper venue as to all defendants pursuant to 28 U.S.C. § 1391 (b).

26.     At all times material hereto, Knox County had waived immunity for the negligent acts of its employees under T.C.A. § 29-20-205. It has further waived immunity for the non-negligent acts of Sheriff's deputies, including jailers appointed by the Sherriff, pursuant to T.C.A. § 8-8-302. *See* T.C.A § 8-8-301, 302; T.C.A. § 41-4-101.

27.     This Court has supplemental jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1367(a).

28.     Jurisdiction is proper, and this court should assume supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over the State Law claims brought against the Defendants individually and officially, pursuant to the Tennessee Governmental Tort Liability Act (TGTLA), T.C.A. §§ 29-20-202; 29-20-205, and T.C.A. 8-8-302, 8-8-303(a), and individually as to the Common and Statute Laws of the State of Tennessee.

29.     Plaintiff is entitled to reasonable attorneys' fees and costs of this action pursuant to 42 U.S.C. § 1988.

## **WAIVER OF IMMUNITY**

30.     As set out in the TGTLA and T.C.A. § 8-8-302, Knox County has waived immunity for the negligence of its deputies and/or employees of the either the Sheriff's Department or the County itself and for the non-negligent actions of deputies and/or jailers of the Sheriff's Department. T.C.A. §§ 29-20-202; 29-20-205; 8-8-302; 8-8-303.

31.     As an officer employed by the Knox County Sheriff's Office, Defendant Corporal Henry Bright and Defendant Frye are each a "Government Employee" as defined by Tenn. Code Ann. § 29-20-107.

32.     There is no immunity for persons for criminal conduct or conduct which is willful or malicious.

33.     There is no immunity for the willful violation of Anthony Weaver's constitutionally protected civil rights.

34.     The governmental immunity of Defendants Knox County and Sheriff "JJ" Jones is also removed as a result of Defendant Bright's and Fryes' willful, wanton and/or gross negligence while acting within the scope of their employment with the Knox County Sheriff's Office when they proximately caused injury to Mr. Weaver and, ultimately, Mr. Weaver's' death.

35.     There is no immunity for willful, malicious and/or criminal conduct.

36.     There is no immunity for gross negligence.

37.     There is no immunity for the violation of the United States Constitutional rights of Anthony Weaver the deprivation of which was clearly established and should have been appreciated by a reasonable deputy or in the alternative employee in the performance of his or her duties.

38. The Knox County Sheriff is statutorily obligated to post a secured bond in an amount no less than One Hundred Thousand Dollars ($100,000.00) to secure the faithful execution of the duties of his office. Tenn. Code Ann. § 8-8-103.

**STATEMENT OF FACTS**

39. Anthony Weaver was well known to the Knox County Sheriff's Office and the Knox County Detention Facility/Jail, having been incarcerated there multiple times in 2015 and 2016.

40. In April of 2016, Mr. Weaver was in custody at the Knox County Detention Facility/Jail, where he was placed on "suicide watch." During that time, Anthony Weaver attempted suicide by cutting his wrists with a Jail-issued razor blade. Furthermore, all of these Defendants were aware Mr. Weaver had previously attempted to commit suicide and suffered from mental illness and drug addiction.

41. Following Mr. Weaver's suicide attempt in April of 2016, an unnamed guard at the Knox County Detention Facility told Anthony Weaver that "he should have gotten a bigger razor blade and done the job right."

42. During this April incarceration, Mr. Weaver was appointed an attorney with the Public Defenders Community Law Office and assigned a Social Worker who worked with/for the Knox County Public Defender's Community Law Office.

43. Mr. Weaver, while in custody from the April 2016 arrest and in recognition of his mental health issues, completed a "4-week Peer Support Group" program at the Knox County Detention Facility.

44. Mr. Weaver's attorney was successful in obtaining bond for Mr. Weaver, who was released from the Knox County Detention Facility on or about July 1, 2016.

45.     Mr. Weaver subsequently was taken back into custody on August 22, 2016 but released the following day, August 23, 2016, on bond. Again, all of these Defendants were aware that Mr. Weaver had previously attempted to commit suicide and suffered from mental illness and drug addiction.

46.     Mr. Weaver advised his Attorney in September of 2016 while he was out on bond that he had made another suicide attempt.

47.     Mr. Weaver's step-daughter was pregnant and in the process of delivering her baby when members of the Knox County Sheriff's Office came to the hospital where the family was gathered to support the daughter during her labor and took Mr. Weaver into custody before his grandchild was born. This occurred on or about October 12, 2016.

48.     Mr. Weaver's newly born step-grandchild had a genetic defect and died within an hour of birth. The death of his step-grandchild was provided to Anthony Weaver the day before his death while he was incarcerated at the Knox County Detention Facility.

49.     At the time of his October 2016 arrest, Mr. Weaver began withdrawing from severe drug usage while detained at the Knox County Detention Facility. All of these Defendants were aware of Mr. Weaver's drug addiction, usage, previous suicide attempts, withdrawal symptoms, mental health condition, suicidal tendencies, his conditions of confinement and failed to take any reasonable measures to prevent Mr. Weaver from engaging in self-harm or suicide.

50.     Mr. Weaver was not provided with medication to help with his withdrawal symptoms, nor was he provided with his prescribed mental health medication. He was also not provided with the correct form of insulin medication.

51.     On or about October 13, 2016, Corporal Bright of the Knox County Sheriff's Office was told by Mr. Weaver's attorney, in her capacity as Mr. Weaver's authorized

representative, that Mr. Weaver was a mental health concern, he was withdrawing from serious drug usage, and immediately needed to be seen by mental health professionals. She also reiterated to Bright that Mr. Weaver was not receiving the proper medications. Defendant Bright acknowledged Mr. Weaver's condition and assured Mr. Weaver's lawyer that he, Defendant Bright, would see to it that Mr. Weaver was seen by mental health professionals. Defendant Bright deliberately, recklessly, and negligently deprived Mr. Weaver of mental health treatment, including the absence of necessary and important therapy and suicide risk assessment while ignoring the obvious risks to Mr. Weaver. Corporal Bright was aware of Mr. Weaver's conditions of confinement, depression, suicidal thoughts, and his expressed desire to die and did not take the reasonable steps to ensure Weaver's serious and obvious medical and mental health needs were addressed.

52.     Mr. Weaver, a pre-trial detainee, was being housed in "intake", a "cell" not acceptable by TCI for "housing" inmates. Mr. Weaver could no longer control his bodily functions; he was not being provided clean clothes when he soiled himself; was not being allowed to shower; had no access to a functioning lavatory facility; had not been seen by any mental health professional; and had not undergone a suicide screening assessment. Due to these housing conditions, Mr. Weaver's physical limitations had deteriorated such that he could not walk and he had to be brought to meet with his attorney on October 18, 2016 in a wheelchair. Mr. Weaver told his attorney that he wanted to die and would take the first opportunity to kill himself, which information was passed onto these Defendants.

53.     Immediately following this meeting with Mr. Weaver on October 18, 2016, Mr. Weaver's attorney advised Officer Frye at the Knox County Detention Facility that Mr. Weaver physical and mental health was worsening, that Mr. Weaver was suicidal,

voicing suicidal ideations and would kill himself if given the opportunity and needed to be seen by a mental health professional immediately.

54.     Defendant Frye acknowledged the attorney's concerns and Mr. Weaver's needs and responded by stating that he, Frye, would "leave a note" for the next shift to call the mental health professionals the next morning about Mr. Weaver. Defendant Frye was aware of Mr. Weaver's conditions of confinement, depression, suicidal thoughts, vulnerability, and his expressed desire to die and did not take reasonable steps to ensure that Mr. Weaver's serious and obvious medical and mental health needs were addressed. Defendant Frye deliberately deprived Mr. Weaver of necessary mental health care, suicide risk assessment and therapy while ignoring the obvious risks to Mr. Weaver.

55.     Despite their actual awareness that Anthony Weaver was voicing suicidal ideations, neither Defendant Bright nor Defendant Frye placed Mr. Weaver on the more serious "Acute" list so as to expedite Mr. Weaver's evaluation and treatment by mental health professionals. Instead, Mr. Weaver was placed on the "IRC" list, which per Knox County Detention Facility policy only required that he be evaluated by a mental health professional within fourteen (14) days after placement on the list. Mr. Weaver tragically committed suicide eleven (11) days after his arrest.

56.     Immediately upon her return to her office, on or about October 19, 2016, Anthony Weaver's attorney met with the Social Worker, Wright Kaminer, and relayed her concerns to Kaminer about Mr. Weaver's physical and mental state and his expressions of suicidal intent. Ms. Kaminer promptly called Defendant Michael Maurer, the mental health licensed clinical social worker assigned to the Knox County Detention Facility, and left a detailed message on his voice mail advising him of Mr. Weaver's mental health, his mental health status, his suicidal tendencies and advising that Weaver was a very high-

risk inmate who needed to be monitored closely for his expressed suicidal intentions. Defendant Maurer had, on a previous incarceration of Mr. Weaver, worked closely with Mr. Weaver to monitor Weaver for suicidal behaviors and intentions. Defendant Maurer had knowledge and notice of Mr. Weaver's suicidal intentions, and deliberately ignored the risks to Mr. Weaver.

57.     On or about October 20, 2016, Wright Kaminer attempted to visit with Mr. Weaver at the Knox County Detention Facility. When asked to visit with Mr. Weaver she was told by Knox County Detention Facility Jail personnel that Mr. Weaver "was not available" for her to visit with him.

58.     On or about October 20, 2016, Defendant Maurer told Wright Kaminer that he had received the lengthy detailed voice message about Mr. Weaver. Defendant Maurer assured Kaminer that "it's been taken care of." Defendant Maurer advised Kaminer that Mr. Weaver had already been moved from Intake to Medical for observation, adding several times "I got it, it's taken care of." Ms. Kaminer stressed to Defendant Maurer that she was very concerned about Mr. Weaver due to his recent history of suicide attempts and expressed suicidal ideations, his mental status, his rapidly declining health, and the facts of his conditions of confinement in Intake and not in Medical. Defendant Maurer intentionally and falsely assured Kaminer that he had taken care of it, when he had not.

59.     In fact, Defendant Maurer never arranged for Mr. Weaver to be moved from Intake to Medical, nor did he ever meet with Mr. Weaver or attempt to secure any type of medical and/or mental health treatment for Mr. Weaver. Sadly, Mr. Weaver slit his own throat in the exact same cell that Mr. Maurer told Mr. Weaver's Social Worker Wright Kaminer he had been removed from. Mr. Weaver did not receive mental health treatment in the days prior to his death.

60. All of these Defendants deliberately interfered with Mr. Weaver's ability to receive treatment and counseling by providing false assurances to Mr. Weaver's attorney and assigned Social Worker while callously ignoring the suicidal risk posed by Weaver.

61. On or about October 23, 2016, because all of these Defendants negligently, intentionally, and/or deliberately ignored the risks to Mr. Weaver, he was provided with a razor by one of the guards/corrections officers at the Knox County Detention Facility, which Weaver then used to slit his own throat.

62. Mr. Weaver died the same day, on October 23, 2016, inside his cell in Intake.

63. On November 2, 2016, responding to the news of Mr. Weaver's death, Defendant Maurer contacted Wright Kaminer and admitted that he had failed to act.

64. At all times material, Knox County Sheriff's Office, Corrections Division, had a written Policy and Procedure Manual with a chapter devoted to "Medical and Mental Health Services," including sub-section "3.3 Suicide Prevention Plan" with a stated goal of maintaining "a suicide prevention and intervention program and to increase staff awareness of the potential for suicide among the inmate population." The Manual further provides that "[a]ll staff with responsibility for inmate's supervision will be trained in the implementation of the program."

65. The "training" was to include identification of "critical times" where an inmate was at risk of suicide; warning signs of an intent to commit suicide, including "after other suicides or suicide attempts," and after receiving "[b]ad news that pertains to a family member" such as death or injury; referral to a mental health professional for evaluation; and determinations as to the appropriate cell placement of a suicidal inmate and precautions to avoid self-harm, such as regular cell checks and restrictions as to the use of utensils and personal property.

66.     That "training" was not being provided to those working in the Knox County Detention Facility and reinforced periodically.

67.     Defendant Sherriff Jones and Defendant Knox County were on notice of the fact that its deputies and jailers were not being provided adequate training with respect to suicide prevention. For example, in August 2016—two months prior to Mr. Weaver's death—Ryan Bolton, 43, was found hanging in his cell in the Knox County Detention Faculty in an apparent suicide. Bolton died two (2) days after being brought into custody. Again, while in custody at the Knox County Detention Facility in April 2016, Mr. Weaver attempted suicide with a Jail-issued razor. Upon information and belief, there have been additional suicides, suicide attempts, and instances of self-harm by detainees in custody at the Knox County Detention Facility that were preventable and which put Defendant Sherriff Jones and Defendant Knox County on notice of the need for further training.

## CIVIL RIGHTS OF ANTHONY WEAVER VIOLATED

68.     Mr. Weaver, as a pretrial detainee, had a right under the Due Process Clause of the Fourteenth Amendment to be protected from his suicidal intentions of which the Defendants were aware.

69.     This constitutional right was clearly established as of October 1, 2016.

70.     Mr. Weaver also had a right under the Due Process Clause of the Fourteenth Amendment to not be subjected to Cruel and Unusual punishment.

71.     This constitutional right was clearly established as of October 1, 2016.

72.     Mr. Weaver had a right under the Fourteenth Amendment to be provided medical care for his serious mental health illness of which the Defendants were aware.

73.     This constitutional right was clearly established as of October 1, 2016.

74.     The failure to train and supervise the jail personnel and deputies at the Knox County Detention Facility in the written policies and procedures for suicide prevention amounted to deliberate indifference to the serious medical needs of Anthony Weaver and the deficiency/failure to train actually caused the individual Defendants' indifference to Weaver's serious medical needs, resulting in the death of Anthony Weaver. The need for adequate training in suicide prevention was obvious and/or Defendant Sherriff Jones and Defendant Knox County were put on notice of the need for further and adequate training by prior suicides, suicide attempts, and instances of self-harm by detainees in the Knox County Detention Facility.

75.     The duty to provide to Mr. Weaver necessary and timely medical treatment was non-delegable.

76.     The failure to provide Mr. Weaver with timely and necessary medical and mental health treatment to address his expressed suicidal intentions after having been made aware of those intentions by Mr. Weaver's authorized representative constituted deliberate indifference to Weaver's serious medical/mental health needs.

77.     The duties of the individual Defendants in this action were ministerial in that they were simply required to follow the mandates of the Department of Corrections policies relating to suicide prevention. Notwithstanding those duties, the individual Defendants did nothing to meaningfully secure treatment or physical protection for Mr. Weaver upon learning that Weaver had expressed his intention to kill himself when given the opportunity.

78.     Giving a suicidal person a razor and leaving the person unsupervised is outrageous and reprehensible conduct.

79.     As a pretrial detainee, Anthony Weaver had a substantive due process right under the Fourteenth Amendment to adequate medical treatment, including treatment for serious mental illness, which resulted in suicidal ideations.

**UNITED STATES OF AMERICA**
**CONSTITUTIONAL CLAIMS**

**COUNT I**
**DEPRIVATION OF CONSTITUTIONAL RIGHT OF WEAVER BY FRYE AND BRIGHT TO BE PROTECTED FROM HIS KNOWN SUICIDAL INTENTIONS**

80.     Plaintiff adopts the allegations contained in paragraphs 1-79 as if fully set forth herein.

81.     Defendants Bright and Frye individually had actual notice of the substantial danger to Weaver and his expressed intention to commit suicide if given the opportunity. These Defendants were or should have been aware that, if appropriate precautions were not taken, there was a strong likelihood Mr. Weaver would attempt to take his own life.

82.     In the days preceding Mr. Weaver's death, each Defendant, Bright and Frye, assured Mr. Weaver's authorized representatives that he would take the necessary steps to protect Weaver from his expressed intention to commit suicide.

83.     Despite these assurances, neither Defendant Bright nor Frye took necessary steps to protect Weaver from his expressed intention to commit suicide.

84.     Each Defendant Bright and Frye knew that Mr. Weaver was vulnerable and suffered from a serious mental/medical condition for which professional mental health care was required. Neither Defendant Bright nor Frye referred Mr. Weaver for immediate mental health evaluation, such as by placing him on the "Acute" list designed for inmates presenting a serious mental health concern. Mr. Weaver was not screened as a suicide risk and considered for transfer to the medical facility or other protective precautions.

85.     The failure of each Defendant Bright and Frye to secure timely and adequate medical treatment for Mr. Weaver resulted in Weaver being left in an Intake cell without any special monitoring or precautions being taken to protect Weaver from himself.

86.     As a result, Mr. Weaver was supplied with a razor by Jail personnel and left unsupervised with that razor.

87.     Weaver used that razor, supplied by the Knox County Detention Facility, to slit his throat, causing his death.

88.     The failure of each of these Defendants, Bright and Frye, to take reasonable action constituted deliberate indifference to a serious medical/mental health condition of which each of them had actual knowledge.

89.     Defendants Bright and Frye knew of Mr. Weaver's substantial vulnerability and his constitutionally-protected right to be protected from his own suicidal intentions of which they were aware.

90.     The duty to protect Anthony Weaver from his suicidal intentions was not discretionary, but rather simply required each of them to take the steps set forth in the written policies and procedures for the Sheriff's Office, which neither of them did.

91.     As a direct and proximate result of Defendant Bright and Frye's failure to protect Weaver's rights under the Due Process Clause of the Fourteenth Amendment and protect him from his vulnerabilities and expressed suicidal intentions, Plaintiff has been damaged, and continues to suffer damages, in the form of costs of Mr. Weaver's final care, funeral expenses, and the loss of the value of his life, as well as his suffering from the time each Defendant was made aware of Weaver's need for medical/mental health treatment until the moment of his final act of despair and desperation in taking his own life.

**WHEREFORE**, Plaintiff demands judgment against Defendants Bright and Frye individually under 42 U.S.C. § 1983 for their respective violation of Anthony Weaver's constitutional rights causing Plaintiff's damages in the amount of five million dollars and no cents ($5,000,000.00), costs of this action and attorney's fees under 42 U.S.C. § 1988, pre-judgment and post-judgment interest.

**COUNT II**
**DEPRIVATION OF CONSTITUTIONAL RIGHT TO TIMELY AND ADEQUATE MEDICAL AND MENTAL HEALTH TREATMENT BY DEFENDANTS BRIGHT AND FRYE**

92.     Plaintiff adopts the allegations contained in paragraphs 1-79 as if set forth fully herein.

93.     Defendants Bright and Frye individually had actual notice of the substantial danger to Weaver and his expressed intention to commit suicide if given the opportunity.

94.     In the days preceding Mr. Weaver's death, each Defendant, Bright and Frye, assured Mr. Weaver's authorized representatives that he would take the necessary steps to protect Weaver from his expressed intention to commit suicide.

95.     Despite these assurances, neither Defendant Bright nor Frye took necessary steps to provide Weaver with the medical/mental health treatment. Neither Defendant Bright nor Frye referred Mr. Weaver for immediate mental health evaluation, such as by placing him on the "Acute" list designed for inmates presenting a mental health concern. Mr. Weaver was not screened as a suicide risk and considered for transfer to the medical facility or other protective precautions.

96.     Each Defendant Bright and Frye knew that Mr. Weaver was vulnerable and suffered from a serious mental health/medical condition for which professional medical and mental health care was required. Given these Defendants knowledge of Mr. Weaver's

expressed suicidal ideations, the failure to relay these concerns to those providing mental health care at the Knox County Detention Facility contributed to Mr. Weaver receiving grossly inadequate medical care.

97.     The failure of each Defendant Bright and Frye to secure timely and adequate medical treatment for Weaver resulted in Weaver being left in an Intake cell without any special monitoring or precautions being taken to protect Weaver from himself.

98.     As a result, Weaver was supplied with a razor in the ordinary course of the Jail routine, and left unsupervised with that razor.

99.     Weaver used that razor, supplied by the Knox County Detention Facility, to slit his throat, causing his death.

100.    That failure of each of these Defendants, Bright and Frye, to take reasonable action constituted deliberate indifference to a serious medical/mental health condition of which each of them had actual knowledge.

101.    Each of these Defendants should have known of the rights of Weaver to be provided with timely and adequate medical/mental health care for his known condition.

102.    The duty to provide Mr. Weaver with timely and adequate medical/mental health treatment for his suicidal intentions was not discretionary, but rather simply required each of them to take the steps set forth in the written policies and procedures for the Sheriff's Office, which neither of them did.

103.    As a direct and proximate result of their failure to provide Mr. Weaver with timely and adequate medical/mental health treatment to prevent his suicide constituted a violation of Mr. Weaver's constitutional rights as a pretrial detainee under the Due Process Clause of the Fourteenth Amendment. Plaintiff has been damaged, and continues to suffer damages, in the form of costs of Mr. Weaver's final care, his funeral expenses,

and the loss of the value of his life, as well as his suffering from the time each Defendant was made aware of Weaver's need for medical/mental health treatment until the moment of Weaver's final act of despair and desperation in taking his own life.

**WHEREFORE**, Plaintiff demands judgment in the amount of five million dollars and no cents ($5,000,000.00), against Defendants Bright and Frye individually under 42 U.S.C. § 1983 for their respective violation of Anthony Weaver's constitutional rights causing Plaintiff's damages, costs of this action and attorney's fees under 42 U.S.C. § 1988, pre-judgment and post-judgment interest.

**COUNT III**
**VIOLATION OF ANTHONY WEAVER'S**
**CONSTITUTIONAL RIGHTS BY DEFENDANT**
**HELEN ROSS MCNABB CENTER**

104.     Plaintiff adopts the allegations contained in paragraphs 1-79 as if set forth fully herein.

105.     Defendant Helen Ross McNabb Center contracted with Defendant Knox County to provide mental health care and services to persons confined at the Knox County Detention Facility.

106.     Those services are fundamental services required to be provided by Knox County and the Knox County Sheriff pursuant to the Tennessee Constitution, Tennessee Statutes, and the United States Constitution pursuant to the Eighth Amendment and the Due Process Clause of the Fourteenth Amendment, and are non-delegable. As a private entity providing medical services to inmates and detainees, Helen Ross McNabb Center is a state actor for the purposes of 42 U.S.C. § 1983.

107.     Defendant Helen Ross McNabb Center had prior notice of Weaver's suicide attempts, vulnerable mental condition, and expressed suicidal ideations, and was advised

as referenced infra through its representative, Defendant Michael Maurer, that Weaver was again in desperate and imminent need of mental health services in October 2016 to prevent Weaver from killing himself.

108.    Despite this actual knowledge and its contractually assumed constitutional obligations to persons confined at the Knox County Detention Facility, which in October of 2016 included Anthony Weaver, Helen Ross McNabb Center failed to provide any medical/mental health care or treatment to Mr. Weaver. In fact, not only did they not provide any medical/mental health care or treatment, Defendant Michael Maurer lied to Mr. Weaver's Social Worker, Wright Kraminer, when he told Ms. Kraminer he had moved Mr. Weaver "to a medical unit" and had it "taken care of."

109.    Defendant Michael Maurer acted pursuant to an unofficial policy or custom of Helen Ross McNabb Center allowing its employees to disregard medical/mental health concerns raised by Knox County Detention Facility inmates' authorized representatives and/or their families, instead relying solely on Knox County Detention Facility staff to flag inmates as a potential suicide risk. The foreseeable result of this *de facto* policy and/or custom was instances of inmate self-harm, such as Mr. Weaver's suicide.

110.    Helen Ross McNabb Center's failure to provide timely and adequate mental health services to Anthony Weaver resulted in Weaver being left in an Intake cell where he was provided a razor and left with it unsupervised which enabled him to slit his throat, causing his death.

111.    This was a violation of Weaver's due process right to timely and adequate medical/mental health treatment, which was clearly defined as of October 2016.

112.     Defendant Helen Ross McNabb Center knew of Mr. Weaver's constitutional right to be provided with timely and adequate medical treatment for medical and mental health conditions about which they were aware.

113.     Defendant Helen Ross McNabb Center was well aware of Anthony Weaver's medical and mental health needs, having treated him when he was jailed in the past and by virtue of the actual notification of Mr. Weaver's expressed suicidal intentions by Mr. Weaver's authorized representatives prior to his suicide.

114.     Notwithstanding this actual knowledge, Defendant Helen Ross McNabb Center failed to provide Mr. Weaver with any medical/mental health treatment, and failed to instruct Knox County Detention Facility staff to place Mr. Weaver in a protective cell with monitoring every fifteen (15) minutes for any indication of active suicidal conduct.

115.     By failing to provide Weaver with treatment to help him get past his suicidal thoughts and desires, and by failing to have the Knox County Detention Facility place Mr. Weaver in a protected environment so he would not have the opportunity to act on his known intentions, Mr. Weaver was given a razor and left unattended/unsupervised with it. Mr. Weaver used that razor to take his own life.

116.     As a direct and proximate result of Helen Ross McNabb Center's *de facto* policy of ignoring mental health concerns raised by inmates' authorized representatives and its related failure to provide Mr. Weaver with timely and adequate medical/mental health treatment to prevent his suicide and the violation of Mr. Weaver's rights under the Fourteenth Amendment, Plaintiff has been damaged, and continues to suffer damages, in the form of costs of Mr. Weaver's final care, his funeral expenses, and the loss of the value of his life, as well as his suffering from the time each Defendant was made aware of Mr.

Weaver's need for medical/mental health treatment until the moment of Weaver's final act of despair and desperation in taking his own life.

**WHEREFORE**, Plaintiff demands judgment in the amount of five million dollars and no cents ($5,000,000.00), against Defendant Helen Ross McNabb Center under 42 U.S.C. § 1983 for its violation of Anthony Weaver's constitutional rights causing Plaintiff's damages, costs of this action and attorney's fees under 42 U.S.C. § 1988, pre-judgment and post-judgment interest.

**COUNT IV**
**CONSTITUTIONAL VIOLATION BY KNOX COUNTY AND SHERIFF JONES**
**FOR THEIR FAILURE TO SUPERVISE OR TRAIN PERSONNEL ON**
**SUICIDE PREVENTION**

117.   Plaintiff adopts the allegations contained in paragraphs 1-79 as if set forth fully herein.

118.   Defendants Knox County and Sheriff Jones established written policies and procedures for the Knox County Corrections Division of the Sheriff's Department in order to address and prevent in-custody suicides. Those policies and procedures required that corrections personnel be trained in those policies and procedures.

119.   The need for adequate training in suicide prevention was obvious and/or Defendant Sherriff Jones and Defendant Knox County were put on notice of the need for further and adequate training by prior suicides, suicide attempts, and instances of self-harm by detainees in the Knox County Detention Facility.

120.   Defendants Bright and Frye were among that class of persons required to be trained in these suicide prevention policies and procedures.

121.     Notwithstanding that requirement, Defendants Bright and Frye were not trained and/or monitored in these policies and procedures, which amounted to deliberate indifference to the rights of inmates with whom Bright and Frye would come into contact.

122.     The deficiency in training caused by this failure to train Defendants Bright and Frye in the suicide prevention policies and procedures, caused Defendants Bright and Frye to be deliberately indifferent to Mr. Weaver's known medical/mental health needs.

123.     The training or supervision of Defendants Bright and Frye was completely inadequate or non-existent, given their inability to recognize the signs that an inmate was likely to engage in self-harm and/or act upon their actual notice that an inmate was in desperate need of medical/mental health intervention to prevent self-harming. Had they been adequately trained, Defendants Bright and Frye each would have relayed the mental health concerns raised by Mr. Weaver's authorized representatives to those providing mental health care at the Knox County Detention Facility.

124.     The inadequacy or non-existence of the necessary training or supervision relating to Knox County Detention Facility suicide prevention policies and procedures was the direct result of the deliberate indifference of Knox County and Sheriff Jones.

125.     That inadequacy or non-existence of the necessary training or supervision caused Defendants Bright and Frye not to act with the immediacy and/or urgency that the situation demanded and/or to follow up and ensure that Mr. Weaver had received medical/mental health treatment and that he was moved to a secure cell where he would not have access to instrumentation that he could use to self-harm.

126.     As a result of the failure to immediately and urgently act on the warnings by Mr. Weaver's authorized representatives, Mr. Weaver was not only left in a regular

Intake cell, he was supplied with a razor by the Knox County Sheriff's personnel, and left unattended where he made good on his expressed intention to kill himself.

127.   As a result of Defendant Knox County's failure to adequately train Detention Facility staff in suicide prevention and the related failure to provide Mr. Weaver with timely and adequate medical and mental health treatment to prevent his suicide which constituted a violation of Weaver's rights under the Due Process Clause of the Fourteenth Amendment, Plaintiff has been damaged, and continues to suffer damages, in the form of costs of Mr. Weaver's final care, his funeral expenses, and the loss of the value of his life, as well as his suffering from the time each Defendant was made aware of Mr. Weaver's need for medical/mental health treatment until the moment of Mr. Weaver's final act of despair and desperation in taking his own life.

**WHEREFORE**, Plaintiff demands judgment in the amount of five million dollars and no cents ($5,000,000.00), against Defendants Knox County and Sheriff Jones under 42 U.S.C. § 1983 for their respective violation of Anthony Weaver's constitutional rights causing Plaintiff's damages, costs of this action and attorney's fees under 42 U.S.C. § 1988, pre-judgment and post-judgment interest.

### COUNT V
### CONSTITUTIONAL VIOLATION BY HELEN ROSS MCNABB CENTER FOR THEIR FAILURE TO TRAIN AND SUPERVISE THEIR EMPLOYEES IN SUICIDE PROVENTION AT THE KNOX COUNTY DETENTION FACILITY

128.   Plaintiff adopts the allegations contained in paragraphs 1-79 as if set forth fully herein.

129.   Defendant Helen Ross McNabb Center was charged with the responsibility to provide mental health care to inmates at the Knox County Detention Facility through its mental health clinicians, social workers and psychologists and psychiatrists. As a

private entity providing medical services to inmates and detainees, Helen Ross McNabb Center is a state actor for the purposes of 42 U.S.C. § 1983.

130.   Those persons were required to be trained and supervised in the needs of Knox County Detention Facility inmates for mental health services. Those persons were also subjected to continuing education requirements by the State of Tennessee.

131.   The person assigned by Defendant Helen Ross McNabb Center to work at the Knox County Detention Facility in October of 2016 was Defendant Michael Maurer.

132.   Prior to October of 2016, Defendant Maurer had failed to meet continuing education requirements to maintain his license in good standing, and Defendant Helen Ross McNabb Center knew that fact. Defendant Maurer admitted to this failure and was sanctioned by the Tennessee Board of Social Worker Licensure.

133.   Defendant Maurer's failure to maintain his license in good standing and failure to meet continuing education requirements was indicative of his lack of training and supervision as to his duties and obligations, including ethical duties and obligations, to persons confined at the Knox County Detention Facility with mental health needs.

134.   The training and supervision of Defendant Michael Maurer was completely inadequate or non-existent to enable Maurer to recognize the signs that an inmate was likely to engage in self-harm and/or act upon his actual knowledge that an inmate was in desperate need of immediate intervention to prevent self-harming.

135.   Helen Ross McNabb Center's failure to train and properly supervise its staff, including Defendant Maurer, in recognizing the signs of an inmate in crisis, responding to mental health concerns raised by inmates' authorized representatives, and taking the necessary steps to prevent self-harming behavior by an inmate, caused Defendant Maurer to be deliberately indifferent to the known medical/mental health needs of Mr. Weaver.

136.    The inadequacy or non-existence of the necessary training or supervision relating to these suicide prevention policies and procedures was the direct result of the deliberate indifference of Defendant Helen Ross McNabb Center. The need for adequate training and supervision in this respect was obvious, with the foreseeable consequence being suicides, suicide attempts, and instances of self-harm by inmates in custody at the Knox County Detention Facility.

137.    That inadequacy or non-existence of the necessary training or supervision caused Defendant Maurer not to act with the immediacy and/or urgency that the situation demanded and/or to follow up and ensure that Mr. Weaver had received medical/mental health treatment and that he was moved to a secure cell where he would not have access to instrumentation that he could use to self-harm.

138.    As a result of the failure to immediately and urgently act on the warnings by Mr. Weaver's authorized representatives, Weaver was not only left in a regular Intake cell, he was supplied with a razor by Knox County Sheriff's personnel, and left unattended where he made good on his expressed intention to kill himself by slitting his throat.

139.    As a result of Defendant Helen Ross McNabb Center's failure to train and supervise its employees and its related failure to provide Mr. Weaver with timely and adequate medical/mental health treatment to prevent Weaver's suicide which constituted a violation of his rights under the Due Process Clause of the Fourteenth Amendment, Plaintiff has been damaged, and continues to suffer damages, in the form of costs of Mr. Weaver's final care, his funeral expenses, and the loss of the value of his life, as well as his suffering from the time each Defendant was made aware of Mr. Weaver's need for medical/mental health treatment until the moment of Weaver's final act of despair and desperation in taking his own life.

**WHEREFORE**, Plaintiff demands judgment in the amount of five million dollars and no cents ($5,000,000.00), against Defendant Helen Ross McNabb Center under 42 U.S.C. § 1983 for their respective violation of Anthony Weaver's constitutional rights causing Plaintiff's damages, costs of this action and attorney's fees under 42 U.S.C. § 1988, pre-judgment and post-judgment interest.

### COUNT VI
### CONSTITUTIONAL VIOLATION BY MICHAEL MAURER IN HIS WILLFUL FAILURE TO PROVIDE MEDICAL/MENTAL HEALTH CARE TO WEAVER

140.    Plaintiff adopts the allegations contained in paragraphs 1-79 as if set forth fully herein.

141.    Defendant Michael Maurer had previous knowledge of Mr. Weaver's mental health issues and was provided actual notice of the urgency of the distress of Anthony Weaver on more than one occasion prior to Mr. Weaver's suicide in October 2016.

142.    Defendant Maurer knew Anthony Weaver had a constitutional right to his life, and to timely and adequate medical/mental health treatment for his serious mental illness which was known to Maurer.

143.    Defendant Maurer acted as Mr. Weaver's mental health provider during an earlier incarceration and therefore had actual knowledge of the mental health issues that Mr. Weaver struggled with.

144.    As a licensed mental health worker assigned to the Knox County Detention Facility, Defendant Maurer knew the types of mental health struggles and the desperation of persons confined, which would include Anthony Weaver.

145.    When Mr. Weaver's assigned Social Worker contacted Defendant Maurer regarding her and Mr. Weaver's attorney's concerns about Weaver's mental health and

expressed suicidal intentions, Defendant Maurer knew Weaver was in need of immediate medical/mental health intervention to protect Weaver from his own dark intentions.

146.    Instead of providing the medical/mental health services for which he was contracted to provide, Defendant Maurer intentionally and knowingly lied to Weaver's authorized representative and told her not to worry as Defendant Maurer had it under control and had actually "taken care of it." In reality, Defendant Maurer had done no such thing. Maurer left Mr. Weaver at the mercy of his own demons in an Intake cell; paralyzed, lying on the floor in soiled jail clothing, helpless where Weaver would have access to a number of objects with which to kill himself, which he did days after Defendant Maurer was informed of Weaver's imminent and serious need for medical/mental health services and days after Mr. Maurer deliberately and intentionally with callous indifference chose to lie to Mr. Weaver's Social Worker, who was there to provide help to Mr. Weaver.

147.    Despite Defendant Maurer's assurances to Mr. Weaver's Social Worker, Mr. Weaver was never screened as a suicide risk or provided mental health treatment, and no precautions were put into place to prevent his suicide.

148.    As a direct and proximate result of the failure by Defendant Maurer to provide Weaver with timely and adequate medical/mental health treatment to prevent Weaver's suicide which constituted a violation of his rights under the Due Process Clause of the Fourteenth Amendment, Plaintiff has been damaged, and continues to suffer damages, in the form of costs of Mr. Weaver's final care, his funeral expenses, and the loss of the value of his life, as well as his suffering from the time each Defendant was made aware of Mr. Weaver's need for medical/mental health treatment until the moment of Weaver's final act of despair and desperation in taking his own life.

149.     Furthermore, Defendant Maurer's failure to provide the required treatment and services necessary to comply with Mr. Weaver's Fourteenth Amendment rights was willful, and not simply an oversight. As such, the willfulness of the conduct is deserving of the imposition of punitive damages so as to prevent such conduct in the future, possibly sparing another family the pain of the preventable loss of a loved one confined to jail.

**WHEREFORE**, Plaintiff demands judgment, in the amount of five million dollars and no cents ($5,000,000.00), against Defendant Michael Maurer under 42 U.S.C. § 1983 for his respective violation of Anthony Weaver's constitutional rights causing Plaintiff's damages, costs of this action, attorney's fees under 42 U.S.C. § 1988, pre-judgment and post-judgment interest and punitive damages in the amount of fifteen million dollars and no cents ($15,000,000.00).

## COUNT VII
### RATIFICATION BY KNOX COUNTY OF THE CONSTITUTIONAL VIOLATIONS BY DEFENDANTS BRIGHT, FRYE, JONES, HELEN ROSS MCNABB CENTER, AND MICHAEL MAURER

150.     Plaintiff adopts the allegations contained in paragraphs 1-79 as if set forth fully herein.

151.     Knox County, as is too often the case, has failed and refused to conduct a proper investigation into the events leading up to Mr. Weaver's preventable death.

152.     Defendant Knox County has failed and refused to identify those persons responsible for the preventable death of Anthony Weaver and punish those persons. As a matter of fact, Knox County did everything in their power to prevent Weaver's spouse from gaining access to the necessary documents in their possession and control when requested by the spouse, and further refused to provide any information to Ms. Weaver as to the circumstances surrounding the death of her husband. By this failure, alone, Knox

County has ratified the actions and inactions of the Defendants Bright, Frye, Jones, Helen Ross McNabb Center and Michael Maurer that resulted in the death of Mr. Weaver. This is commonplace for Knox County.

153.     Upon information and belief, Defendant Knox County has similarly failed to conduct proper investigations and/or reasonably respond to requests for information following prior suicides, suicide attempts, and instances of self-harm by those in custody at the Knox County Detention Facility. Such ratification of the unconstitutional acts of these Defendants and others in similarly situated positions is sufficient to deem such unconstitutional conduct and omissions as the unwritten official policy of Defendants Knox County and Sheriff Jones.

154.     The repeated ratification by Defendants Knox County and Sherriff Jones of unconstitutional conduct and omissions by their deliberate and intentional refusal to acknowledge, investigate, prevent, and punish members of the Sherriff's Office, Knox County Detention Facility staff, and Helen Ross McNabb Center employees resulted in the preventable death of Mr. Weaver, with damages to his widow, Plaintiff Linda Weaver. By following their leadership, Knox County Detention Facility staff and Helen Ross McNabb Center employees simply did what they were taught: ignored Mr. Weaver's cries for help while he lay on the floor in soiled clothing waiting for someone to come to his aid; ignored the actual notice by Mr. Weaver's authorized representatives that he was actually and actively expressing suicidal intentions; and ignored notification by Mr. Weaver's concerned cellmates that Mr. Weaver was talking about suicide. These Defendants acted as they did because they knew they could do so with impunity—without fear of being investigated, disciplined, or subjected to other adverse consequences.

155.     As a result of the ratification of the unconstitutional failure to provide Mr.

Weaver and similarly situated inmates with timely and adequate medical/mental health

treatment and to prevent Mr. Weaver's suicide which constituted a violation of his rights

under the Due Process Clause of the Fourteenth Amendment, Plaintiff has been damaged,

and continues to suffer damages, in the form of costs of Weaver's final care, his funeral

expenses, and the loss of the value of his life, as well as his suffering from the time each

Defendant was made aware of Weaver's need for medical/mental health treatment until

the moment of Weaver's final act of despair and desperation in taking his own life.

**WHEREFORE**, Plaintiff demands judgment against Defendant Knox County in

the amount of five million dollars and no cents ($5,000,000.00), under 42 U.S.C. § 1983

for their respective violation of Anthony Weaver's constitutional rights causing Plaintiff's

damages, costs of this action and attorney's fees under 42 U.S.C. § 1988, pre-judgment

and post-judgment interest.

**COUNT VIII**
**RATIFICATION BY HELEN ROSS MCNABB CENTER OF THE**
**CONSTITUTIONAL VIOLATIONS BY DEFENDANT MICHAEL MAURER**

156.     Plaintiff adopts the allegations contained in paragraphs 1-79 as if set forth

fully herein.

157.     Defendant Helen Ross McNabb Center has failed and refused to conduct a

proper investigation into the events leading up to the preventable death of Mr. Weaver.

Upon information and belief, Helen Ross McNabb Center has similarly failed to conduct

proper investigations into prior suicides, suicide attempts, and instances of self-harm by

incarcerated persons in its care.

158.     Defendant Helen Ross McNabb Center has failed and refused to identify

those persons and those acts or omissions responsible for the preventable death of Mr.

Weaver and take appropriate disciplinary action. By this failure, Defendant Helen Ross McNabb has ratified the actions and inactions of Defendant Maurer that resulted in the death of Anthony Weaver. Helen Ross McNabb Center has a history in similarly situated incidents of ignoring the acts and omissions of its employees thus ratifying the unwritten policy which Mr. Maurer adopted that ultimately led to the death of Mr. Weaver.

159. Such ratification of the unconstitutional acts of Maurer by Defendant Helen Ross McNabb Center is sufficient to deem its unconstitutional conduct and omissions as official policy of Defendant Helen Ross McNabb Center.

160. That ratification has resulted in the preventable death of Anthony Weaver, and with damages to his widow, Plaintiff Linda Weaver. Defendant Maurer ignored the concerns raised by Mr. Weaver's authorized representatives because Maurer knew that he could do so with impunity—without fear of being investigated, disciplined, or subjected to other adverse consequences.

161. As a result of the ratification of the unconstitutional failure to provide Mr. Weaver with timely and adequate medical/mental health treatment to prevent Weaver's suicide which constituted a violation of his rights under the Due Process Clause of the Fourteenth Amendment, Plaintiff has been damaged, and continues to suffer damages, in the form of costs of Mr. Weaver's final care, his funeral expenses, and the loss of the value of his life, as well as his suffering from the time each Defendant was made aware of Mr. Weaver's need for medical/mental health treatment until the moment of Weaver's final act of despair and desperation in taking his own life.

**WHEREFORE**, Plaintiff demands judgment in the amount of five million dollars and no cents ($5,000,000.00), against Defendant Helen Ross McNabb Center under 42 U.S.C. § 1983 for their respective violation of Anthony Weaver's constitutional rights

causing Plaintiff's damages, costs of this action and attorney's fees under 42 U.S.C. §

1988, pre-judgment and post-judgment interest.

## STATE OF TENNESSEE
## CONSTITUTIONAL CLAIMS

### COUNT IX
### ARTICLE 1 § 13. TREATMENT OF PRISONERS,
### TENNESSEE STATE CONSTITUTION

*That no person arrested and confined in jail shall be treated with unnecessary rigor.*

162.    Plaintiff adopts the allegations contained in paragraphs 1-79 as if set forth

fully herein.

163.    Plaintiffs' decedent had a constitutional right pursuant to Article 1 § 13 of

the Constitution of the State of Tennessee not to be treated with unnecessary rigor while

confined in jail, especially where he was housed at the Knox County Detention Facility as

a pretrial detainee.

164.    That constitutional pronouncement in Article 1 § 13 sets forth the threshold

(i.e. minimum) requirement for conditions of confinement.

165.    Failing to provide clean clothes; a safe cell in which to be housed given Mr.

Weaver's medical and mental health conditions as they existed in October of 2016;

denying Mr. Weaver the simple human kindness of a shower after he had soiled himself

due to his inability to control his bodily functions; and providing Mr. Weaver with the

very instrument that he used to kill himself even though aware that Mr. Weaver was

suicidal constituted "unnecessary vigor" and was a violation of Mr. Weaver's rights under

the Constitution for the State of Tennessee.

166.    As a result of these constitutional violations, Mr. Weaver was caused to

suffer and was ultimately permitted to take his own life thereby causing damages to

Plaintiff. Due to the suicide of Anthony Weaver, Plaintiff has suffered damages in the form of the loss of support and companionship of Anthony Weaver, medical bills and expenses, funeral expenses, loss of the value of the life of Anthony Weaver, and loss of the love and affection of her spouse.

**WHEREFORE** Plaintiff demands damages against Defendant Knox County and Sheriff Jimmy "JJ" Jones for the unconstitutional conditions of decedent's confinement in the amount of three million three hundred thousand dollars ($3,300,000.00) and additionally seek punitive damages in the amount of three million three hundred thousand dollars ($3,300,00.00) for the willful and wanton disregard of the constitutional rights of the Plaintiff's Decedent and the probability of harm to him arising out of the outrageous conduct of these Defendants.

**COUNT X**
**ARTICLE 1 § 16. EXCESSIVE BAIL OR FINES; CRUEL AND UNUSUAL PUNISHMENT, TENNESSEE STATE CONSTITUTION**

> *That excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.*

167.    Plaintiff adopts the allegations contained in paragraphs 1-79 as if set forth fully herein.

168.    Plaintiffs' decedent had a constitutional right under the Constitution of the State of Tennessee not to be subjected to cruel and unusual punishment, especially where he enjoyed the status of a pretrial detainee.

169.    That constitutional pronouncement in Article 1 § 16 of the Tennessee State Constitution sets forth the threshold/minimum requirement for conditions of confinement.

170. Weaver's confinement, and the conditions of that confinement, were so inhumane as to constitute inhumane treatment and a violation of the Tennessee State Constitution, which directly resulted in Plaintiff's Decedent's suffering and death.

171. Depriving Anthony Weaver of regular showers when needed, clean and hygienic living conditions, clean clothes and bedding due to his inability to control his bodily functions, which Defendants knew, and prompt and appropriate medical care when called for; failing to properly screen, segregate, and monitor pretrial detainees at high risk for suicide; forcing the Defendant to be placed in an intake cell when he had lost the use of his legs and his bodily functions in an understaffed jail which prevented the jail personnel from providing proper supervision to persons confined who were at high risk for suicide clearly rise to the level of a finding that the conditions of confinement were the functional equivalent of cruel and unusual punishment without Plaintiff's decedent ever having been convicted of an offense that would subject him to punishment.

172. As a result of these constitutional violations, Anthony Weaver was caused to suffer and ultimately was allowed to take his own life thereby causing damages to Plaintiff. Due to the suicide of Anthony Weaver, Plaintiff has suffered damages in the form of the loss of support and companionship of Anthony Weaver, medical bills and expenses, funeral expenses, loss of the value of the life of Anthony Weaver, and loss of the love and affection of her spouse.

**WHEREFORE** Plaintiff demands damages against Defendants Knox County and Sheriff Jimmy "JJ" Jones for the unconstitutional conditions of her Decedent's confinement in the amount of three million three hundred thousand dollars ($3,300,000.00) and additionally seeks punitive damages in the amount of three million three hundred thousand dollars ($3,300,00.00) for the willful and wanton disregard of

the constitutional rights of the Plaintiffs' decedent and the probability of harm to him arising out of the outrageous conduct of these Defendants.

## COUNT XI
## ARTICLE 1 § 32. TREATMENT OF PRISIONERS
## TENNESSEE STATE CONSTITUTION

*That the erection of safe prisons, the inspection of prisons,*
*and the humane treatment of prisoners, shall be provided*
*for.*

173.    Plaintiff adopts the allegations contained in paragraphs 1-79 as if set forth fully herein.

174.    Plaintiffs' decedent had a constitutional right to be housed in a safe prison and to be provided humane living conditions while housed at the Knox County Detention Facility while a pretrial detainee.

175.    That constitutional pronouncement sets forth the threshold requirement for the condition of the facility and the conditions of confinement.

176.    Weaver's confinement, and the conditions of that confinement, were so inhumane as to constitute inhumane treatment and a violation of the Tennessee State Constitution which resulted in Plaintiff's Decedent's death.

177.    Depriving Anthony Weaver of regular showers when he had soiled himself, clean and hygienic living conditions, clean clothes and bedding after he had soiled himself due to his loss use of his legs and loss of control over his bodily functions, and prompt and appropriate medical care when called for; failing to properly screen, segregate, and monitor pretrial detainees at high risk for suicide; forcing the Defendant to live in a cell in intake in an understaffed jail which prevented the jail personnel from providing proper supervision to persons confined who were at high risk for suicide clearly rise to the level of a finding that the conditions of confinement were the functional equivalent of cruel and

unusual punishment without Plaintiff's Decedent ever having been convicted of an offense that would subject him to punishment.

178. These constitutional violations cause Anthony Weaver to suffer and to ultimately take his own life after being provided the means by a corrections officer at the Knox County Detention Facility, thereby causing damages to Plaintiff. Due to the suicide of Anthony Weaver, Plaintiff has suffered damages in the form of the loss of support and companionship of Anthony Weaver, medical bills and expenses, funeral expenses, loss of the value of the life of Anthony Weaver, and loss of the love and affection of her spouse.

**WHEREFORE** Plaintiff demands damages against Defendants Knox County and Sheriff Jimmy "JJ" Jones, for the unconstitutional conditions of her Decedent's confinement in the amount of three million three hundred thousand dollars ($3,300,000.00) and additionally seek punitive damages in the amount of three million three hundred thousand dollars ($2,300,00.00) for the willful and wanton disregard of the constitutional rights of the Plaintiffs' decedent and the probability of harm to him arising out of the outrageous conduct of these Defendants.

## LAWS OF THE STATE OF TENNESSEE CLAIMS

### COUNT XII
### NEGLIGENCE BY DEFENDANTS BRIGHT AND FRYE
### RESULTING IN THE WRONGFUL DEATH OF ANTHONY WEAVER

179. Plaintiff adopts the allegations contained in paragraphs 1-79 as if set forth fully herein.

180. Defendants Bright and Frye were working in the course and scope of their duties at the Knox County Detention Facility when they were separately notified by Mr. Weaver's attorney and authorized representative that Mr. Weaver was a suicide risk. Mr.

Weaver's attorney requested that they take appropriate action to protect Mr. Weaver from his mental illness and prevent Weaver from harming himself.

181.    Defendants Bright and Frye each had a duty to exercise reasonable care for the protection of persons in their custody, such as Mr. Weaver. Because these Defendants were aware or should have been aware that Mr. Weaver had expressed an intent to harm himself, Bright and Frye owed a duty to Mr. Weaver to protect him from his foreseeable self-destructive acts.

182.    Defendants Bright and Frye separately assured Mr. Weaver's attorney and authorized representative that they, Bright and Frye, would ensure that the appropriate steps were taken to protect Mr. Weaver from his expressed suicidal intentions.

183.    Neither Defendant Bright nor Defendant Frye took any appropriate action to follow through on their assurances to Mr. Weaver's authorized representative that they would take reasonable precautions to prevent Mr. Weaver from injuring himself.

184.    Neither Defendant ensured Mr. Weaver would be placed in a cell for suicide observation or on "suicide watch" as required by the policies and procedures for suicide prevention in the Knox County Detention Facility. Despite their actual awareness that Anthony Weaver was voicing suicidal ideations, neither Defendant Bright nor Defendant Frye placed Mr. Weaver on the more serious "Acute" list so as to expedite Mr. Weaver's evaluation and treatment by mental health professionals. Instead, Mr. Weaver was placed on the "IRC" list, which per Knox County Detention Facility policy only required that he be evaluated by a mental health professional within fourteen (14) days after placement on the list. Mr. Weaver tragically committed suicide eleven (11) days after his arrest.

185.	Had either Bright or Frye followed through as promised, Anthony Weaver would not have remained in an Intake cell where he was given a razor by a Knox County Detention Facility corrections officer, which razor he used to slit his throat.

186.	The failure to follow through with the promises to Mr. Weaver's attorney that appropriate measures would be taken in light of the information provided to each of them about Mr. Weaver's suicidal tendencies and his present suicidal intentions were the proximate cause of Weaver's suicide, which was entirely foreseeable as he was permitted to remain in Intake where he was provided the razor used to slit his throat. Bright and Frye's actions constitute gross negligence in that they both recklessly disregarded or were consciously indifferent to the substantial risk that Mr. Weaver would harm himself and/or attempt suicide. In the alternative, Bright and Frye negligently failed to perceive the risk to Mr. Weaver and ensure he was provided adequate medical/mental health treatment, breaching the duty of care owed to Weaver.

187.	As a result of the gross negligence, or in the alternative, negligence by both Defendants Bright and Frye, Plaintiff's Decedent suffered and took his life, causing damages to Plaintiff. Due to the suicide of Mr. Weaver, Plaintiff has suffered damages in the form of the loss of support and companionship of Anthony Weaver, medical bills and expenses, funeral expenses, loss of the value of the life of Mr. Weaver, and loss of the love and affection of her spouse.

**WHEREFORE** Plaintiff demands judgment in the amount of three million three hundred thousand dollars and no cents ($3,300,000.00) against Defendants Bright and Frye in their official capacity pursuant to T.C.A. § 8-8-302 for the reckless, wanton, and willful actions of these Defendants, or in the alternative, pursuant to T.C.A. § 29-20-205 for their negligent acts, and for costs of this action, and pre-judgment and post-judgment

interest. Plaintiffs alternatively demand judgment against Defendants Bright and Frye in their individual capacities under Tennessee common law.

**COUNT XIII**
**NEGLIGENCE BY KNOX COUNTY SHERIFF JIMMY "JJ" JONES**
**RESULTING IN THE WRONGFUL DEATH OF ANTHONY WEAVER**

188.    Plaintiff adopts the allegations contained in paragraphs 1-79 as if set forth fully herein.

189.    Notwithstanding the written policy and procedures relating to suicide prevention, Defendant Sheriff Jimmy "JJ" Jones has failed to train the staff at the Knox County Detention Facility in the implementation of Sub-Section 3-3, Suicide Prevention Plan, of the Knox County Corrections Division Policy and Procedure Manual.

190.    That failure includes:

    (a)    training on critical times during an inmate's incarceration during which the inmate is at greater risk for suicidal thoughts and actions; and/or

    (b)    detection of warning signs that an inmate is considering suicide.

    (c)    Overseeing the duties performed by these employees;

    (d)    Developing departmental policies, rules and regulations;

    (e)    Ensuring the housing conditions of its inmates are constitutional;

    (f)    Prohibiting and punishing unconstitutional acts of his employees;

    (g)    Developing and implementing mechanisms and processes to ensure inmates are receiving adequate mental health and medical treatment;

    (h)    Ensuring compliance with these departmental policies, rules, and regulations.

191. Knox County and Sherriff Jones had a duty to exercise reasonable care for the protection of persons in the custody of the Knox County Detention Facility, such as Mr. Weaver. This duty of care included a duty to provide adequate medical/mental health treatment to detainees and to train its employees to provide adequate medical/mental health treatment.

192. Upon information and belief, there have been additional suicides, suicide attempts, and instances of self-harm by persons in custody at the Knox County Detention Facility that were preventable, and which put Defendant Sherriff Jones and Defendant Knox County on notice of the need for further training. For example, in August 2016—two months prior to Mr. Weaver's death—Ryan Bolton, 43, was found hanging in his cell in the Knox County Detention Faculty in an apparent suicide. In failing to provide adequate training, Knox County and Sherriff Jones' actions constitute gross negligence in that they recklessly disregarded or otherwise were consciously indifferent to the substantial risk of further suicides, suicide attempts, and instances of self-harm. In the alternative, Knox County and Sherriff Jones negligently failed to perceive this risk and breached the duty of reasonable care owed to Weaver.

193. Had the staff at the Knox County Detention Facility been properly trained, monitored, supervised, and held accountable on suicide prevention, they would have noted that Anthony Weaver had had multiple prior suicide attempts both in the jail and in the community; that Anthony Weaver was arrested at the hospital just prior to the birth of his grandchild whom he later learned in jail died shortly after its birth; and that Weaver was facing a decision on his criminal charges. Furthermore, the staff would have known better than to ignore the requests and calls for actions of Mr. Weaver's attorney and his Social Worker, who notified jail personnel that Mr. Weaver had expressed an intention to

commit suicide. And would further have allowed Weaver's attorney and Social Worker to visit with him rather than intentionally informing each of them that Mr. Weaver was unavailable when he was in fact available.

194.     Had the staff been properly trained on suicide prevention, it would have been noted that Anthony Weaver's physical health had deteriorated to the point that he was unable to use his legs and unable to control his normal bodily functions, in and of itself a humiliating and devastating progression of his physical decline; that the staff at the jail had refused to allow Weaver to shower and clean himself after incidents where he could not control his bodily functions nor would they permit him to have clean clothes; that Weaver had openly discussed with his cell mates, his attorney and the social worker for the Public Defender's office that he wanted to kill himself; that Weaver had prior medical and mental problems and a psychiatric history which included multiple suicide attempts in and out of jail; that Weaver's attorney and his Social Worker from the Public Defender's office had warned staff at the Knox County Detention Facility and members of the Sheriff's Office/Corrections Department that Weaver was openly discussing killing himself; that Weaver was very depressed and had been unable to meet with his attorney and the Public Defender's Social Worker in the final few days of his life; that jail personnel had previously suggested to Weaver that he needed to use a larger razor to kill himself; and that Weaver was not receiving medications to assist with the pain of withdrawal from drugs and to address his various other medical needs.

195.     Those persons working for the Knox County Detention Facility and Knox County Sheriff's Office who were aware that Anthony Weaver was suicidal failed to take the appropriate protective measures to protect Mr. Weaver from his suicidal tendencies.

196.    The failure to properly train Knox County Detention Facility staff in the policies referenced herein was directly responsible for staff members' failure to relay the concerns of Weaver's authorized representatives to mental health professionals, identify and implement protective measures for Weaver, which measures were intended to save his life and protect him from his own depression and suicidal tendencies.

197.    Because of that failure, Weaver was left in an Intake cell without supervision or monitoring and was given a razor by the Knox County Detention Facility personnel, which he used to take his own life.

198.    The suicide of Anthony Weaver was a reasonably foreseeable consequence of the lack of training of the staff in suicide prevention.

199.    As a result of Defendants Knox County and Sheriff Jones' gross negligence, or in the alternative, negligence in failing to train its staff, Plaintiff's Decedent suffered and took his life, thereby causing damages to Plaintiff. Due to the suicide of Mr. Weaver, Plaintiff has suffered damages in the form of the loss of support and companionship of Anthony Weaver, medical bills and expenses, funeral expenses, loss of the value of the life of Mr. Weaver, and loss of the love and affection of her spouse.

**WHEREFORE** Plaintiff demands judgment in the amount of three million three hundred thousand dollars and no cents ($3,300,000.00) against Defendant Knox County and Sheriff Jimmy "JJ" Jones pursuant to T.C.A. § 8-8-302 for the reckless, wanton, and willful actions of these Defendants that resulted in the death of Anthony Weaver, or in the alternative, pursuant to T.C.A. § 29-20-205 for their negligent acts, and for costs of this action, and pre-judgment and post-judgment interest.

## COUNT XIV
## WEAVER'S PRE-DEATH, PAIN AND
## SUFFERING AND FRIGHT

200.    Plaintiff adopts the allegations contained in paragraphs 1-79 as if set forth fully herein.

201.    As a result of the unlawful actions by these Defendants, Mr. Weaver laid virtually paralyzed on the floor inside an "intake" cell, vulnerable to suicide, suffering severe mental health and emotional issues, and making clear his desire to end his life.

202.    Notwithstanding their knowledge of Mr. Weaver's physical and mental health needs, Defendants were grossly negligent, or in the alternative, negligent in failing to address his medical needs with the urgency called for by Mr. Weaver's state of health and state of mind.

203.    Defendants committed gross negligence and willful misconduct, or in the alternative, negligence in assuring Mr. Weaver's authorized representatives that they had taken action to protect Mr. Weaver and provide the medical and mental health services he required, when they had not.

204.    These omissions and actions of these Defendants caused Mr. Weaver great pain and suffering.

205.    To the extent that these actions and omissions were malicious, willful, and reckless, that warrants the imposition of punitive damages to deter these Defendants from ignoring the cried call for help of a suffering inmate and from similar conduct in the future and to act as a deterrent to others who might otherwise engage in such conduct.

**WHEREFORE** Plaintiff demands judgment in the amount of three million three hundred thousand dollars and no cents ($3,300,000.00) against Defendants Knox County and Sheriff Jimmy "JJ" Jones pursuant to T.C.A. § 8-8-302 for the reckless,

wanton, and willful actions of these Defendants, or in the alternative, pursuant to T.C.A.

§ 29-20-205 for their negligent acts, that resulted in Mr. Weaver suffering injuries pre-

death, including pain, suffering and fright, of which Plaintiff is entitled to compensation,

and for costs of this action, pre-judgment and post-judgment interest.

## **DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury on all issues triable as of right by a jury.

**RESPECTFULLY SUBMITTED**, this the  6  day of  February  2018.


**THE BOWLIN LAW FIRM P.C.**

BY: _____

Troy L. Bowlin, II
Attorney for Linda Weaver
First Tennessee Plaza
800 South Gay St. Suite 2131
Knoxville, Tennessee 37929
Telephone: 865.245.2011
troy@tblf-pc.com
www.thebowlinlawfirm.com